**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JONATHAN HEARN,**                                 **Case No. 2:22-cv-2916**

        **Petitioner,**

                               **District Judge James L. Graham**

**v.**                                                      **Magistrate Judge Peter B. Silvain, Jr.**

**WARDEN, BELMONT
CORRECTIONAL INSTITUTION,**

        **Respondent.**

---

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court to consider the Petition (Doc. 1), the Return of Writ (Doc. 6), Petitioner's Reply (Doc. 8), and the state court record.  (Doc. 5.)  For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

### I.   FACTUAL BACKGROUND

On December 12, 2019, in Case Number 19-CR-511, a Washington County, Ohio grand jury indicted Petitioner on two counts of Felonious Assault (counts one and two), and two counts of Attempted Murder (counts four and five), all with a repeat violent offender specification, as well as one count of misdemeanor child endangering (count three).  (Doc. 5, at PAGEID # 65-66.)  On February 12, 2020, and represented by counsel, Petitioner signed and executed a written change of plea form and pled guilty to the two charges of Felonious Assault, in violation of O.R.C. § 2903.11(A)(1) & (D)(1)(a), set forth in counts one and two, both felonies of the second degree.  (*Id*. at PAGEID # 68-71.)  Pursuant to the terms of the negotiated plea agreement, the trial court dismissed counts three through five, as well as the repeat violent offender specifications.  (*Id*. at

PAGEID # 69.)  The parties also agreed that Petitioner would be sentenced to seven years in prison as to each count, to be served consecutively.  (*Id.*)  The state appellate court made the following findings of fact with respect to Petitioner's plea and sentencing:

{¶ 2} In December 2019, a Washington County Grand Jury returned an indictment that charged appellant with (1) two counts of felonious assault, in violation of R.C. 2903.11(A)(1), both second-degree felonies; (2) one count of endangering children, in violation of R.C. 2919.22(A), a first-degree misdemeanor, and (3) two counts of attempted murder, in violation of R.C. 2923.02(A) and 2903.02(A), first-degree felonies. All four felonies included a Repeat Violent Offender Specification. Appellant entered not guilty pleas.

{¶ 3} On February 12, 2020, appellant pleaded guilty to two felonious assault counts in violation of R.C. 2903.11(A)(1), and appellee requested a dismissal of counts three, four, and five along with the specifications. The trial court then recited the parties' agreed disposition that appellant serve a seven-year prison term on each charge, to be served consecutively. Further, the trial court notified appellant about the mandatory three-year postrelease control term and the consequences of a postrelease control violation. The trial court also discussed with appellant the implications of the Reagan Tokes Law, and explicitly stated that the Reagan Tokes Law could result in an additional "three-and-a-half years of additional prison for being bad."

{¶ 4} The February 21, 2020 sentencing entry provides:

"[U]pon Defendant's Guilty plea to the crimes of FELONIOUS ASSAULT, a felony of the second degree, in violation of the Ohio Revised Code section 2903.11(A)(1)&(D)(1)(a), as charged in Count One; and FELONIOUS ASSAULT, a felony of the second degree, in violation of Ohio Revised Code section 2903.11(A)(1)&(D)(1)(a), as charged in Count Two of the indictment, the Defendant is sentenced to a mandatory sentence of fourteen (14) years in the Orient Correctional Reception Center. The maximum possible sentence is a prison term of seventeen and a half (17 ½) years under the new law."

{¶ 5} The February 21, 2020 entry also indicated that the court notified appellant that "he will be subject to a period of mandatory postrelease control for three (3) years," and included the consequences for a postrelease control violation. Appellant filed a timely pro se notice of appeal on March 5, 2020.

{¶ 6} On May 6, 2020, the trial court issued an amended entry to correct an error in the February 21, 2020 entry and states:

\* \* \*

the Defendant is sentenced to *prison for seven (7) years in Count One, and seven (7) years in Count Two, running consecutively to each other, with maximum possible term of ten and a half (10 ½) years, for an aggregate of seventeen and a half (17 ½ years). The mandatory sentence term is fourteen (14) years.* The maximum possible sentence is a prison term of seventeen and a half (17 ½) years under the new law.

{¶ 7} On June 22, 2020, the trial court issued a second amended entry and states:

\* \* \*

the Defendant is sentenced to prison for a definite sentence of seven (7) years for the offense of FELONIOUS ASSAULT, as charged in Count One, with a maximum possible term of ten and a half (10 ½) years, and a definite sentence of seven (7) years for the offense of FELONIOUS ASSAULT, as charged in Count Two, to run consecutively to each other. The total sentence imposed is a prison term of fourteen (14) years, with a maximum possible term of seventeen and a half (17 ½) years under the new law.

(Doc. 5, at PAGEID # 152-54); *State v. Hearn*, No. 20CA7, 2021-Ohio-594, 2021 WL 842602, *1-2 (4th Dist. Feb. 22, 2021).

## II.    PROCEDURAL HISTORY

### A. Direct Appeal

On March 9, 2020, Petitioner, proceeding *pro se*, filed a timely notice of appeal to the Ohio Fourth District Court of Appeals.  (Doc. 5 at PAGEID # 96-106.) The appellate court appointed counsel for Petitioner, and Petitioner raised three assignments of error:

First Assignment of Error:  The trial court did not have jurisdiction to resentence defendant-appellant.

Second Assignment of Error:  The defendant-appellant's plea was involuntary and must be vacated.

Third Assignment of Error:  The indefinite sentencing scheme adopted by the Reagan Tokes Act is an unconstitutional violation of separation of powers, such that defendant's sentence must be vacated.

(*Id*. at PAGEID # 110.)

On February 22, 2021, the state appellate court issued a decision sustaining Petitioner's first assignment of error and overruling Petitioner's second and third assignments of error. (*Id.* at PAGEID # 151-69.) With respect to the first assignment of error, the appellate court determined that the trial court's amended sentencing entries were "legal nullities" because the trial court no longer had jurisdiction to act once the notice of appeal was pending. (*Id.* at PAGEID # 158.) The court of appeals remanded the case to the trial court, authorizing the trial court to file new amended sentencing entries, because "generally nothing precludes a trial court from filing amended entries after a remand." (*Id.*)

Petitioner did not appeal the decision of the Fourth District Court of Appeals to the Ohio Supreme Court, and his filing deadline expired April 8, 2021.

### B. Amended Sentencing Entry

On March 15, 2021, and pursuant to the remand from the court of appeals, the trial court filed an amended sentencing order correcting Petitioner's original sentencing entry. (Doc. 5, at PAGEID # 349-56.) Petitioner did not appeal the amended sentencing entry.

### C. Post-Conviction

On July 29, 2020, Petitioner, proceeding *pro se*, filed a post-conviction action seeking to vacate or set aside his conviction. (Doc. 5, at PAGEID # 199-223.) Petitioner set forth three claims for relief all asserting ineffective assistance of trial counsel:

Claim One: [Petitioner] was deprived of [his] Sixth Amendment right to counsel because trail [sic] counsel was ineffective.

Claim Two: [Petitioner] was deprived of [his] Sixth Amendment right to effective assistance of counsel, right to a speedy and public trail [sic], right to call witnesses in [his] defense.

Claim Three: [Petitioner] was denied the 5th and Fourteenth and the Sixth was denied due process and right to efftive [sic] assistance of counsel.

4

(*Id*. at PAGEID 202, 209, 214.). On August 18, 2020, the trial court denied the petition for post-conviction relief, finding Petitioner "made a knowing, intelligent, and voluntary guilty plea in the presence of counsel and the Court," and Petitioner's plea "waived any claim that his counsel was ineffective."  (*Id*. at PAGEID # 262.)

Petitioner did not appeal the trial court's decision denying post-conviction relief.

**D. Rule 26(B) Application to Reopen Appeal.**

On April 26, 2021, Petitioner filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. R. 26(B).  (Doc. 5, at PAGEID # 170-86.)  Petitioner alleged appellate counsel provided ineffective assistance of counsel on direct appeal by failing to raise the following claim:

> The trial court erred in the prejudice of appellant in its acceptance of a guilty plea which was not knowing, intelligent and voluntary, in violation of appellant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 [of] the Ohio Constitution.

(*Id*. at PAGEID # 172.)  The gist of Petitioner's claim was that appellate counsel should have alleged that the trial court erred by "misadvising him of the mandatory nature of his prison term" and "advising him that, before he serves his maximum prison term, he may be eligible to earn credit against his prison term and be eligible for early release."  (*Id*. at PAGEID # 192.)

On September 28, 2021, the state appellate court declined to reopen the direct appeal, finding Petitioner failed to establish a genuine issue as to whether he was deprived of the effective assistance of counsel on direct appeal.  (*Id*. at 187-98.)  Petitioner had until November 12, 2021, to appeal the decision of the court of appeals denying his Rule 26(B) application.  The Ohio Supreme Court refused to consider Petitioner's appeal, because it was received three days late, on November 15, 2021.  (Doc. 8, at PAGEID # 520.)

### E. Motion to Withdraw Plea

On March 15, 2021, Petitioner filed a motion to withdraw his guilty plea.  (Doc. 5, at PAGEID # 299.)  On March 17, 2021, the trial court denied the motion.  (*Id*. at PAGEID # 348.) Petitioner did not appeal the trial court's decision.

### F. Second Motion to Withdraw Plea

On November 19, 2021, Petitioner filed a second motion to withdraw his guilty plea. (Doc. 5 at PAGEID # 357-58.). On May 24, 2022, the trial court denied the motion.  (*Id*. at PAGEID # 359.)  Petitioner did not file a notice of appeal.

## III.  HABEAS PROCEEDINGS

On July 25, 2022, Petitioner, proceeding *pro se*, filed the instant federal habeas petition, raising the following two grounds for relief:

> **GROUND ONE**: Petitioner received ineffective assistance of counsel on his direct appeal in violation of the Sixth Amendment to the Constitution of the U.S.A.
>
> **Supporting Facts**: Petitioner's appellate counsel's representation fell well below the standard for reasonable performance. The appellate counsel's performance was deficient and counsel's deficient performance prejudiced the petitioner. In the direct appeal, appellate counsel failed to raise numerous issues with regards to the negotiated written plea agreement.
>
> **GROUND TWO**: The trial court erred in the prejudice of petitioner with its acceptance of a guilty plea which was not made knowingly, intelligently, or voluntarily in violation of the Petitioner's due process rights under the Fifth and Fourteenth Amendments to the Constitution of the United States of America.
>
> **Supporting Facts**: The Petitioner did not plead knowingly, intelligently or voluntarily because of misrepresentation of trial counsel, misrepresentation of the plea agreement written by the prosecutor, and misleading and contrary to law statements from the judge, he could not have intelligently made the plea and therefore did not voluntarily make the plea under Criminal Rule 11.

(Doc. 1, at PAGEID # 6-8.)

On September 27, 2022, Respondent filed a Return of Writ. (Doc. 6.) Respondent contends that both claims for relief are procedurally defaulted and alternatively, without merit. Specifically, Respondent alleges that Petitioner did not raise the claim of trial court error contained in his second claim for relief on direct appeal. Petitioner's first claim for relief alleges that appellate counsel was ineffective for failing to raise that claim of trial court error on direct appeal, but according to Respondent, Petitioner also defaulted this claim for relief, because Petitioner did not file a timely appeal of the denial of his Rule 26(B) application to reopen his appeal. Alternatively, Respondent argues that both claims lack merit, because Petitioner entered a knowing and voluntary plea with the assistance of counsel, and the trial court imposed a jointly recommended sentence. (*Id*. at PAGEID # 474.)

## IV. STANDARDS OF REVIEW

### A. AEDPA

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214, apply to this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding. Specifically, under AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors. This standard

is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015). Additionally, this Court's habeas review is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

### B. Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state

courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

## V.  DISCUSSION

In his habeas petition, Petitioner sets forth two grounds for relief.  In his first ground for relief, Petitioner argues his appellate counsel was ineffective, because counsel failed to raise on direct appeal a claim that the trial court erred in accepting Petitioner's plea when that plea was not entered knowingly and voluntarily, because Petitioner did not understand the maximum penalty involved.  (Doc. 1, at PAGEID # 35; Doc. 8, at PAGEID # 494-95.)  Petitioner's first claim for relief is closely related to his second claim for relief, which sets forth the freestanding claim of trial court error that Petitioner asserts should have been raised on direct appeal.  Although the claims of ineffective assistance of appellate counsel and trial court error are analytically distinct, the claims are intertwined and the resolution of one claim necessarily informs the resolution of the other.

### A.  Procedural history of Petitioner's claims

In his first claim for relief, Petitioner argues his appellate counsel was ineffective, because counsel failed to raise numerous issues concerning his understanding of the negotiated plea agreement.  Respondent asserts Petitioner did not fairly present the substance of this claim to the state courts, because he did not timely appeal the appellate court's denial of his Rule 26(B) application to the Ohio Supreme Court.  (Doc. 6, at PAGEID # 449.)

The record reflects that on direct appeal, appellate counsel argued, as Petitioner's second proposition of law, that his plea was involuntary, because the trial court failed to strictly comply with Ohio Crim. R. 11(C) to ensure Petitioner understood the implications of the newly enacted Reagan Tokes Law on the maximum penalty Petitioner faced, including whether the new law applied to Petitioner.  (Doc. 5, at PAGEID # 116-18.)  The court of appeals overruled this assignment of error, finding "the trial court and counsel advised appellant several times about the

10

Reagan Tokes Law's implications and that appellant could receive an additional three-and-one-half years for bad behavior during his term of imprisonment," and that Petitioner "failed to show that, but for the alleged inaccuracy, he would not have otherwise entered his plea." *State v. Hearn*, 2021-Ohio-594, ¶ 23, 2021 WL 842602, at *5-6 (4th Dist. Feb. 22, 2021).  It does not appear that Petitioner sought to appeal the appellate court's decision to the Ohio Supreme Court, and the filing deadline expired on April 8, 2021.

The state court record also reflects that on April 26, 2021, Petitioner filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. R. 26(B).  (Doc. 5, at PAGEID # 170-86.)  Petitioner alleged his appellate counsel provided ineffective assistance on direct appeal by limiting his argument to Petitioner's understanding of the implications of the Reagan Tokes Law.  Petitioner argued his appellate counsel should have raised the following claim:

> The trial court erred in the prejudice of appellant in its acceptance of a guilty plea which was not knowing, intelligent and voluntary, in violation of appellant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 [of] the Ohio Constitution.

(*Id*. at PAGEID # 172.)  In particular, Petitioner argued appellate counsel should have asserted that the trial court erred by incorrectly advising him regarding the mandatory nature of his prison term, and by advising him he could be eligible to earn credit against his prison term, as well as early release.  (*Id*. at PAGEID # 192.)  This is the same claim of trial court error that Petitioner has alleged as his second claim for relief in these habeas proceedings.

On September 28, 2021, the Fourth District Court of Appeals declined to reopen Petitioner's direct appeal, finding Petitioner failed to establish a genuine issue as to whether he was deprived of the effective assistance of appellate counsel.  (*Id*. at PAGEID # 187-98.)  Specifically, the court of appeals examined the sentencing transcript and determined the trial court

11

substantially complied with sentencing requirements. With respect to the mandatory nature of his sentence, the court of appeals stated:

> Appellant now contends that his plea agreement is misleading and inaccurate. We point out that a portion of the plea agreement states: "No promises have been made to me except as part of this plea agreement, stated entirely as follows: Plead to counts 1 and 2, remaining counts and the specifications will be dismissed. Serve a 7 year prison term on each count consecutively, up to a maximum possible term of 17 1/2 years." However, appellant points out that the beginning portion of the plea agreement specified in one part that none of the sentence is mandatory: "I understand that the MAXIMUM penalty COULD be: a maximum basic prison term of 20 years of which O years are mandatory." Thus, while one part of the agreement states that zero years of appellant's penalty are mandatory, another part of the document correctly sets forth the plea and the correct nature of the penalty.
>
> In State v. Straley, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, the Supreme Court of Ohio concluded that it is not a manifest injustice when a trial court fails to inform a defendant during the plea colloquy that he would be subject to mandatory prison sentences. Id. at 28. In the case at bar, the trial court advised appellant of the mandatory nature of his sentence during the plea colloquy, at sentencing, and in the sentencing entry, but not in the opening paragraph of the written plea agreement. Consequently, in view of this information we believe that the trial court substantially complied with the sentencing requirements. See also State v. Smith, 8th Dist. Cuyahoga No. 83395, 2004-Ohio-1796, 11 ("The mere fact that the [trial] court did not specifically say, 'You are ineligible for probation' or 'This offense requires a mandatory term of prison' will not be fatal unless the record clearly indicates that the defendant was unaware that he would be sent to prison upon a plea of guilty and he was prejudiced by that fact.") Here, we do not believe that appellant could have been confused about the sentence that the trial court intended to impose.
>
> Appellant further contends that the trial court erred by advising him that he may be eligible to earn credit towards his sentence or be eligible for early release. In support, appellant points to the court's statement in the transcript that appellant will "be released from prison at the end of his prison sentence at the end of his minimum term, or presumptively early release date; whichever is earlier." Appellant also cites the following exchange in the transcript:
>
> THE DEFENDANT: Is – is there any way that I can get an earlier release, like after ten years?
>
> THE COURT: Well, there are – you can talk to your attorney. There are provisions, based upon how long you're sentenced for making application through the court.

THE DEFENDANT: I got three children out there, and I'd just like to get back to taking care of them.

THE COURT: Well, you can talk to your attorney. There are motions that can be filed in that regard for an earlier release, but we can't – we can't consider them now.

THE DEFENDANT: Not – all right.

Although it appears that the trial court may have indicated that a possibility could exist concerning appellant's eligibility to earn credit toward early release, as we concluded in appellant's direct appeal, we believe that the trial court sufficiently complied with Crim.R. 11. The court informed appellant of the maximum sentence and appellant indicated that he understood the sentence. Expressing an understanding of the maximum sentence includes an inherent understanding that the mandatory nature of the sentence would make him ineligible for community control sanctions, early release, and earned credit.  State v. Parker, 12th Dist. Butler No. CA2018-12-229, 2020-Ohio- 414, 24; State v. Eckler, 12th Dist. Butler No. CA2019-02-035, 2019-Ohio-4828, 12.

* * *

In the case at bar, the trial court imposed appellant's sentence pursuant to the parties' agreed disposition.  During the plea colloquy, the court asked appellant, "[y]ou understand the agreement is – is seven years on each?" to which appellant replied, "I – yes.  I know – yeah, the seven years on each."  As we held in appellant's direct appeal, the trial court substantially complied with Crim. R. 11. Consequently, appellant has failed to establish his claim of ineffective assistance of counsel.

(Doc. 5, at PAGEID # 193-97.)

Respondent contends that both the claim of trial court error and the claim of ineffective assistance of appellate counsel for failing to raise the claim of trial court error on appeal are procedurally defaulted.  According to Respondent, the underlying claim of trial court error was not raised on direct appeal, and because Petitioner did not file a timely appeal of the appellate court's decision denying his Rule 26(B) application to reopen his appeal, his claim of ineffective assistance of appellate counsel for failing to raise the claim of trial court error is also defaulted.  It is well settled that the ineffective assistance of appellate counsel can excuse the procedural default

that occurs when a claimed error is not raised on direct appeal, but that is only the case where the ineffective assistance of appellate counsel claim is itself raised and fully litigated as provided by state law.  *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Respondent contends that is not the case here.

### B.  Procedural Default

Petitioner argues he attempted to appeal the appellate court's decision denying his Rule 26(b) application, but the Ohio Supreme Court determined his appeal was untimely, by only three days.  Specifically, Petitioner states:

> On or about November 4, 2021, Petitioner Hearn sent his appeal of the decision to the Ohio Supreme Court by entering it into the prison mail system. However, due to delays in the prison outgoing mail procedure and through no fault of his own, the mail was not received at the court until Nov. 15th.  The deadline for the appeal to reach the Ohio Supreme Court was November 12, 2021. Unfortunately, unlike the federal courts, there is no "mailbox rule" to rely on and Ohio Supreme Court deadlines are strictly enforced.  Since the documents were not received until the 15th day of November, a full eleven days after it was mailed, the court refused to file them, even though it was a delay created by the prison mailroom at Belmont Correctional Institution, an institution under the control of the Ohio Department of Rehabilitation and Correction, i.e. the State of Ohio. Because of the document's delayed delivery, the court returned the filing stating in a letter from the Clerk's Office that the documents did not comply with Rule 7.01, which provides:
>
>> 7.01(4)(c): The provision for delayed appeal does not apply to appeals involving postconviction relief or appeals brought pursuant to App. R. 26(B).  The Clerk shall refuse to file motions for delayed appeal involving postconviction relief or App. R. 26(B).

(Doc. 1-1, at PAGEID # 21-22.)  Thus, Petitioner concedes his notice of appeal following the denial of his Rule 26(B) application was received by the Ohio Supreme Court after the filing deadline, but Petitioner argues the prison mail system and actions by the Ohio Department of Rehabilitation and Corrections serve as cause and prejudice to excuse any procedural default of his claim.  (*Id*. at PAGEID # 22.)

In this case, Petitioner committed more than one procedural default.  In order to satisfy the fair presentation requirement, a habeas petitioner must present his constitutional claims for relief to the state's highest court for consideration.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Hafley v. Sawders,* 902 F.2d 480, 483 (6th Cir. 1990).  If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989).  Here, Petitioner failed to raise the underlying claim of trial court error set forth as his second claim for relief on direct appeal.  Further, once Petitioner sought to assert a claim of ineffective assistance of appellate counsel for failing to raise that claim of trial court error on direct appeal, Petitioner did not timely appeal the adverse decision of the court of appeals dismissing his Rule 26(B) application.  Petitioner's appeal of the denial of his Rule 26(B) application was received after the filing deadline and the Ohio Supreme Court – the last level of available state court review – refused to consider his appeal.  Petitioner had forty-five days, or until November 12, 2021, to file an appeal of the denial of his Rule 26(B) application.  The Ohio Supreme Court received Petitioner's appeal on November 15, 2021, and deemed it untimely.  The timely filing requirement in Rule 26(B) has been repeatedly upheld as an adequate and independent state procedural ground of decision. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010).

### 1. Cause to excuse the default

With respect to the appeal of the denial of his Rule 26(B) application, Petitioner asserts the prison mailroom was responsible for the untimely filing, because he submitted his appeal paperwork for delivery to the Ohio Supreme Court on November 4, 2021, eight days before the

November 12, 2021, deadline.  (Doc. 8, at PAGEID # 515, 518-19.)  Ohio does not follow the federal "prison mailbox rule," which provides that submissions by *pro se* prisoners "are considered filed at the moment of delivery to prison officials for mailing."  *Foster v. Warden, Chillicothe Corr. Inst.,* 575 F. App'x 650, 653-54 (6th Cir. 2014) (citing *Houston v. Lack,* 487 U.S. 266, 271-72 (1988).  However, "a state's 'strict filing deadline' rule, which generally prevents its courts from entertaining untimely submissions, does not apply to prevent federal habeas courts 'from excusing that procedural default upon a finding of cause and prejudice.'"  *Kidd v. Warden*, No. 1:13cv867, 2015 WL 269431, *7 (S.D. Oh. Jan. 21, 2015) (Bertelsman, D.J., adopting Report and Recommendation) (quoting *Foster*, 575 F. App'x at 654); *Henderson v. Palmer,* 730 F.3d 554, 560 (6th Cir. 2013); *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003)).  That is:

> The Sixth Circuit has held that inaction by prison mailroom officials "in mailing a prisoner's court filing is one objective factor that may constitute cause" excusing the prisoner's failure to meet a state filing deadline even in states, such as Ohio, where the federal mailbox rule does not apply. *Id.* (and Sixth Circuit cases cited therein); *see also Terry v. Warden, Lebanon Corr. Inst .,* No. 1:08cv820, 2010 WL 4878934, at *24-25 (S.D. Ohio June 14, 2010) (Wehrman, M.J.) (Report & Recommendation), *adopted,* 2010 WL 4878904 (S.D. Ohio Nov. 23, 2010) (Spiegel, J.); *Nethers v. Sheldon,* No. 2:09cv324, 2010 WL 4513816, at *7 (S.D. Ohio Oct. 28, 2010) (Abel, M.J.) (Report & Recommendation), *adopted,* 2010 WL 4932482 (S.D. Ohio Nov. 30, 2010) (Frost, J.). In such cases, cause "sufficient to excuse a procedural default based upon a late filing" is established when shown that the *pro se* prisoner attempted "to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events." *Henderson*, 730 F.3d at 560 (quoting *Maples,* 340 F.3d at 439); *see also Foster*, 575 F. App'x at 654.  It is clear under Sixth Circuit precedents that "when a prisoner submits a [court pleading] to the prison mailroom five days prior to a filing deadline and it is not delivered" in a timely manner "there is cause to excuse [the] procedural default." *Henderson,* 730 F.3d at 560 (quoting *Maples*, 340 F.3d at 439); *see also Foster,* 575 F. App'x at 564 (holding that an Ohio prisoner, who had "delivered his filing to prison officials at least five days before it was due," established cause for his procedural default because "[e]ven allowing for a prison's mail procedures, five days certainly provided sufficient time for it to arrive timely in the normal course of events") (internal citation and quotation marks omitted).

*Kidd*, 2015 WL 269431 at *8.

The Court in *Taylor v. Sheldon*, 1:19cv231, 2019 WL 8509655, at *9 (N.D. Ohio Jan. 3, 2019), *report and recommendation adopted*, 1:18cv231, 2020 WL 896511 (N.D. Ohio Feb. 25, 2020, faced similar facts to this case.  There, the petitioner's appeal of the denial of his Rule 26(B) application was deemed untimely by the Ohio Supreme Court.  The habeas court noted "although the mailbox rule does not apply, the Sixth Circuit has explained that '[w]here a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events', that circumstance 'is sufficient to excuse a procedural default based upon a late filing.'"  The *Taylor* court found cause to excuse default on the following facts:

> The Ohio appellate court denied Petitioner's 26(B) application on January 26, 2017. Thus, pursuant to the Rules of Practice of the Supreme Court of Ohio, Petitioner's appeal was due by March 13, 2017. *See* Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i). Petitioner attached to his Petition the first page of a Memorandum in Support of Jurisdiction file stamped by the Ohio Supreme Court Clerk on March 14, 2017 (the day after it was due). (Doc. 1-16, at 1). He also attached withdrawal slips from his prison account for postage dated March 5, 2017, and marked "paid" on March 7, 2017 for mail to the Clerk of the Supreme Court and the Richland County Assistant Prosecutor. (Doc. 1-16, at 2-3). Respondent makes no reference to these exhibits or address any mail delay as cause, but rather asserts that neither Petitioner's *pro se* status, nor ineffective assistance of counsel can serve as cause for the default. (Doc. 5, at 25-26). The undersigned finds Petitioner has shown cause to excuse the default based on his showing that he submitted a request for postage eight days before his appeal was due, and postage was paid just six days prior. Thus, Petitioner presented his documents to prison officials "in sufficient time for [them] to arrive timely in the normal course of events", *Maples*, 340 F.3d at 439, and as such, his procedural default may be excused.

*Id*. at *9.

Here, as set forth in the Reply to Respondent's Return of Writ, Petitioner seeks to supplement the record with three items:

1.  Inmate Demand Statement (Showing date mail to Ohio Supreme Court was "processed" on 11/05/21 delivered to BeCI Staff 11/04/21);
2. Ohio Supreme Court letter from Clerk refusing to file late Notice of Appeal received on November 15, 2021; and
3. Copy of postmarked envelope received at Oh. S. Ct. bearing date of November 9th, 2021 (five days after delivery to BeCI Staff for mailing).

(Doc. 8, at PAGEID # 518-22.)  Respondent has not addressed Petitioner's request to supplement the record.

Generally, review of a state court's decision in a federal habeas corpus petition "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Rule 7 of the Rules Governing Section 2254 Cases provides, however, that the district court "may direct the parties to expand the record by submitting additional materials relating to the petition."  Consistent with the restrictions set forth in *Pinholster*, courts have found that Rule 7 supplementation of the record may be permitted when a petitioner seeks to establish cause and prejudice to excuse a procedural default.  *See*, *e.g.*, *Daniels v. Warden*, 1:21cv636, 2022 WL 6765091, at *2 (S.D. Ohio Oct. 11, 2022).  Moreover, "[t]he decision of whether to expand the record . . . is within the sound discretion of the district court." *West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008).  Because the additional documents tendered with the Reply will assist the Court for the limited purpose of determining whether cause exists to excuse a procedural default, the Court **GRANTS** Petitioner's motion to expand the record, which was included in Petitioner's Reply to the Return of Writ.  (Doc. 8, at PAGEID # 518-22.)

Petitioner has attached a copy of his prison account statement showing a $2.36 debit from his account for "postage charges" to the "Ohio Supreme Court" dated November 5, 2021, seven days before his appeal filing was due on November 12, 2021.  (Doc. 8, at PAGEID # 519.) Petitioner has also attached a postmarked envelope, addressed to the Ohio Supreme Court, which was returned to him when that court rejected his appeal filing.  The envelope is clearly marked in large bold letters "Do Not Delay, Legal Mail, Time Sensitive."  (*Id*. at PAGEID # 521.)  Although the postmark date is not legible on the copy submitted by Petitioner, the Court affords Petitioner the benefit of the doubt that the postmark reads November 9, 2021.  Notably, Respondent has not

disputed this date or any of Petitioner's contentions regarding the mailing of his appeal.  Based on these exhibits, it appears Petitioner presented his legal mail to prison officials "in sufficient time for [it] to arrive timely in the normal course of events."  *Maples*, 340 F.3d at 439.  Under these facts, Petitioner has demonstrated cause for the late filing of his appeal that may be able to excuse his procedural default.

### 2.  Prejudice

The Court's inquiry does not end with a finding of cause.  To overcome a default, a petitioner must also show "actual prejudice as a result of the alleged constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  That is, Petitioner's procedural default will only be excused if Petitioner can show that appellate counsel's alleged ineffectiveness in not raising the underlying claim of trial court error on direct appeal rose to the level of a Sixth Amendment violation.  This determination necessarily involves an examination of the merits of the underlying claim.  For the reasons discussed below, the Undersigned finds Petitioner cannot make the required showing of prejudice.

As an initial matter, this Court conducts *de novo* review of an ineffective assistance of counsel claim when determining whether it can establish cause and prejudice to excuse a procedural default.  *See Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009)).  It is well settled that a criminal defendant is entitled to the effective assistance of appellate counsel on a first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  "Claims of ineffective assistance of appellate counsel are subject to the test established by *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to show both deficient performance and resulting prejudice.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To that end, Petitioner must show that his appellate counsel was "objectively unreasonable" for

not raising the underlying claim of trial court error on direct appeal and a "reasonable probability that, but for his counsel's unreasonable failure [to do so], he would have prevailed on his appeal." *Id*. at 285-86 (citing *Strickland*, 466 U.S. at 687-91, 694). When evaluating the issue of ineffective assistance of appellate counsel, courts review the appellate proceedings to determine whether prejudice is shown. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009).

Under *Strickland*, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690. "[T]his is a deferential standard that is challenging for a claimant to meet." *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017). Appellate counsel is not required to present meritless claims, *see Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013), and counsel need not raise every non-frivolous claim in order to provide effective assistance, *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011). The failure to raise an issue on appeal constitutes ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the outcome of the appeal. *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). To show ineffective assistance when appellate counsel presents one argument instead of another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith*, 528 U.S. at 289). In the context of procedural default, establishing *Strickland* prejudice likewise establishes prejudice for purposes of cause and prejudice. *Smith v. Warden*, 780 F. App'x 208, 225 (6th Cir. 2019). With this standard in mind, the Undersigned finds it was not objectively unreasonable for Petitioner's appellate counsel to fail to raise on direct appeal the claim of trial court error Petitioner now seeks to assert involving his understanding of the maximum penalty involved, and inclusion of this issue would not have altered the outcome of the appeal.

Because a guilty plea operates as a waiver of important constitutional rights, the Fourteenth Amendment's Due Process Clause requires that a guilty plea be made voluntarily, knowingly and intelligently "'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The question of whether a plea was entered knowingly and intelligently turns on whether the defendant understood the nature of the charges against him and was "aware of the direct consequences of the plea" and "the maximum sentence that could be imposed." *King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994). Although a defendant must be apprised of the direct consequences, "the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *Id*. at 153; *see also Kratt v. Garvey,* 342 F.3d 475, 485 (6th Cir. 2003) (same). What is required for "sufficient awareness of the relevant circumstances and likely consequences," is that the defendant is correctly informed of the maximum sentence that could be imposed. *Ruelas v. Wolfenbarger,* 580 F.3d 403, 408 (6th Cir. 2009) ("While a defendant need not know all the possible consequences of his plea . . . he must be aware of the maximum sentence to which he is exposed.").

When a federal habeas petitioner challenges the validity of his plea, the state has the burden to show that the guilty plea was voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238 (1969). This burden can be satisfied by providing a transcript of a proper plea colloquy in the state court proceedings. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact that the plea was proper. *Id.* at 326-27. And the petitioner bears a "heavy burden" to overturn that presumption of correctness. *Id*. at 328. Here, Respondent has provided a full transcript of the change of plea hearing. (Doc. 5-1, at PAGEID # 406-27.)

21

The decision of the Fourth District Court of Appeals denying Petitioner's Rule 26(B) application is instructive.  In his Rule 26(B) application, Petitioner argued his appellate counsel should have alleged that the trial court erred by "misadvising him of the mandatory nature of his prison term" and "advising him that, before he serves his maximum prison term, he may be eligible to earn credit against his prison term and be eligible for early release."  (Doc. 5, at PAGEID # 192.) The appellate court declined to reopen the direct appeal, finding Petitioner failed to establish a genuine issue as to whether he was deprived of the effective assistance of counsel on direct appeal.  (*Id*.)  Specifically, the court concluded that the trial court substantially complied with Ohio Criminal Rule 11(C)(2)(a) in taking the plea, and that under the totality of the circumstances, Petitioner understood the plea and sentence.  (*Id*.)

The appellate court recognized that the opening paragraph of the plea agreement contained contradictory information by stating: "I understand that the MAXIMUM penalty could be: a maximum basic prison term of 20 years of which 0 years are mandatory."  (*Id*. at PAGEID # 194.) Despite this paragraph, the court of appeals determined "the trial court advised appellant of the mandatory nature of his sentence during the plea colloquy, at sentencing, and in the sentencing entry," and this "substantially complied with the sentencing requirements."  (*Id*.)  The appellate court cited the following exchange in deciding that "[h]ere, we do not believe that appellant could have been confused about the sentence that the trial court intended to impose":

> You understand that the – while there's an agreed disposition of seven years on each of the charges, to run consecutively with one another, the actual maximum on these particular counts is eight years.  But it's – it's – the agreement is only doing seven.  You understand that?

After appellant responded affirmatively, the court stated:

> As I indicated, there's an agreed disposition that upon this plea, the other counts and the specifications will be dismissed.  You're going to get seven years on each of the two counts.  It'll be consecutive.  So it'll be fourteen years.

22

(Doc. 5, at PAGEID # 194.)

With respect to the issue of early release, the trial court stated that Petitioner would be "released from prison at the end of his prison sentence, at the end of his minimum term, or presumptively early release date, whichever is earlier." (*Id*. at PAGEID # 195.)  When Petitioner inquired if there was "any way that I can get an earlier release, like after ten years?" the trial court advised Petitioner to "talk to your attorney" and "there are motions that can be filed in that regard for an earlier release, but we can't – we can't consider them now." (*Id*.)  The appellate court opined:

> Although it appears that the trial court may have indicated that a possibility could exist concerning appellant's eligibility to earn credit toward early release, as we concluded in appellant's direct appeal, we believe that the trial court sufficiently complied with Crim. R. 11.  The court informed appellant of the maximum sentence and appellant indicated he understood the sentence.  Expressing an understanding of the maximum sentence includes an inherent understanding that the mandatory nature of the sentence would make him ineligible for community control sanctions, early release, and earned credit.

(*Id*. at PAGEID # 196.)

After reviewing the change of plea and sentencing transcript as well as both decisions by the court of appeals – both the decision on direct appeal and the decision denying the Rule 26(B) application – the Undersigned concludes that the trial court accepted Petitioner's plea and imposed sentence in accordance with the agreed disposition of the parties.  Petitioner signed a written plea of guilty, he was represented by counsel, the trial court reviewed that written guilty plea and inquired of both Petitioner and his counsel regarding the terms and understanding of the plea. (Doc. 5-1, at PAGEID 407-15.)  Petitioner acknowledged in open court that he had signed the plea, that he was satisfied with his attorney's advice, that he could read and write, that he understood the maximum penalty, that he was proceeding of his own free will and that no threats or promises

23

had been made other than what was outlined in the plea form.  (*Id.*) The plea agreement stated that Petitioner would serve seven years on each count consecutively for a total of fourteen years, with the potential for additional time imposed under the terms of the Reagan Tokes Law.  The record also reflects that Petitioner had rejected a previous plea deal wherein he would agree to serve eight years as to each count for a total of sixteen years, prior to entering into the final plea agreement wherein he agreed to a better deal of fourteen years.  (*Id.* at PAGEID # 403-04.)  This plea agreement also resulted in the dismissal of two counts of attempted murder and the repeat violent offender specifications.  Under these facts, Petitioner has not established that his plea was unknowing, or that he would not have entered his plea but for misleading statements by the trial court.  *See United States v. Davis,* 422 F. App'x 445, 449 (6th Cir. 2011) (a petitioner is not entitled to relief absent a showing of a "reasonable probability that, but for the error, he would not have entered the plea") (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

Additionally, Petitioner cannot establish that the issues appellate counsel raised on direct appeal were not as strong as the omitted claim.  Based on the uncertainty in the law regarding the constitutionality of the Reagan Tokes Law, counsel's decision to challenge that aspect of Petitioner's plea cannot be said to be deficient.  Indeed, counsel raised three issues on appeal – two pertained to the Reagan Tokes Law, the constitutionality of which has only recently been settled by the Ohio Supreme Court, more than two years after Petitioner's appeal, *see State v. Hacker*, Nos. 2020-1496 and 2021-0532, -- N.E.3d --, 2023-Ohio-2535 (July 26, 2023).  The third issue challenged the legality of the trial court's amended sentencing entries once a notice of appeal had been filed, and that claim was ultimately meritorious, resulting in a remand to the trial court. (Doc. 5, at PAGEID # 152-54); *State v. Hearn*, No. 20CA7, 2021-Ohio-594, 2021 WL 842602, *1-2 (4th Dist. Feb. 22, 2021).  Under these circumstances, it appears counsel made a strategic

decision to focus on the claims counsel perceived to be the strongest, and it cannot be said that the omitted issue concerning Petitioner's understanding of the maximum penalty was clearly stronger than the issues that were presented on appeal, one of which was sustained by the appellate court. Petitioner has not demonstrated that appellate counsel's performance and selection of claims for appeal fell outside the wide range of reasonable professional assistance.

Because the Undersigned has determined Petitioner cannot establish prejudice resulting from appellate counsel's failure to raise the substantive claim of trial court error in connection with the plea, Petitioner cannot establish the required prejudice to excuse the default of his ineffective assistance of appellate counsel claim set forth as his first claim for relief. Because that ineffective assistance of appellate counsel claim is defaulted, that claim cannot excuse the procedural default of the substantive claim of trial court error set forth as the second claim for relief in these habeas proceedings. *See Edwards v. Carpenter*, 529 U.S. 446 (2000). The claims are both procedurally defaulted. It is therefore **RECOMMENDED** that the habeas petition be **DENIED** and this action be **DISMISSED WITH PREJUDICE.**

## VI.  CONCLUSION

For the foregoing reasons, the Undersigned **GRANTS** Petitioner's motion to expand the record with supporting documents pertaining to his attempt to file a timely appeal of his Rule 26(B) application.

Additionally, the Undersigned **RECOMMENDS** that the Petition be **DENIED** and this action be **DIMISSED WITH PREJUDICE**. Specifically, the Undersigned finds that both of Petitioner's claims for relief are procedurally defaulted.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

September 14, 2023                                    s/Peter B. Silvain, Jr.
                                                     Peter B. Silvain, Jr.
                                                     United States Magistrate Judge