**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|                                         |   |                              |
|-----------------------------------------|---|------------------------------|
| **Jonathan Hearn,**                     | : |                              |
|                                         | : | **Case No. 2:22-cv-2916**    |
| **Petitioner,**                         | : |                              |
| **v.**                                  | : | **Judge Graham**             |
|                                         | : |                              |
| **Warden, Belmont Correctional**        | : | **Magistrate Judge Silvain** |
| **Institution,**                        | : |                              |
|                                         | : |                              |
| **Respondent.**                         | : |                              |

**<u>OPINION & ORDER</u>**

This matter is before the Court upon Petitioner Jonathan Hearn's objections (ECF No. 12) to the Magistrate Judge's Report and Recommendation ("R&R") (ECF No. 10), which recommended dismissal of the instant habeas action on the basis of procedural default.[1] Because the Court finds merit in Petitioner's objections, the Court **SUSTAINS** the same, to the extent set forth herein. Accordingly, the Court **GRANTS** the petition for writ of habeas corpus (ECF No. 1).

Due to incorrect information in the written plea agreement, Petitioner Jonathan Hearn ("Petitioner") entered his guilty pleas believing he would be eligible for Ohio's statutory sentence-reduction opportunities, such as a judicial release and credit for program participation (often known as "good time credit"). *See, e.g.,* O.R.C. § 2929.20; O.R.C. § 2967.193; O.R.C. § 2967.194. But due to his criminal history, Petitioner was in fact categorically ineligible for such programs, and he thus received sentences that could not be so reduced. *See* O.R.C. § 2929.13(F)(6). The misleading plea agreement was never corrected during the plea and sentencing hearing. In fact, the record indicates that Petitioner was never advised of the mandatory—i.e., irreducible—nature of the sentence he faced. He therefore entered the plea agreement with a fundamental

---

[1] In the same order, the Magistrate Judge also granted Petitioner's motion to expand the record. *See* ECF No. 8, 36.

misunderstanding of "the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970). Because the Due Process Clause requires that a guilty plea be entered knowingly and voluntarily, Petitioner's plea must be vacated. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171, 22 L. Ed. 2d 418 (1969) ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.").

## PROCEDURAL POSTURE

This is a *pro se* habeas corpus action brought under 28 U.S.C. § 2254. Petitioner filed his petition for writ of habeas corpus on July 25, 2022. ECF No. 1. Respondent filed a return of writ, along with the state court record, on September 27, 2022. ECF No. 6; ECF No. 5. Thereafter, the Magistrate Judge conducted an initial screening of the petition, as set forth in the R&R filed September 14, 2023. R&R, ECF No. 10; *See* RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, 4 (describing screening procedure) *and* Am. Columbus Gen. Order 22-01, filed February 1, 2022 (referring initial habeas screens to magistrate judges). The Magistrate Judge concluded that the petition should be dismissed because the two (2) claims upon which the petition is based are both procedurally defaulted, and Petitioner cannot make the requisite showing to excuse the procedural default. R&R, 25.

Petitioner filed objections on November 6, 2023. ECF No. 12. Respondent did not file any objections and did not file a response to Petitioner's objections; however, Respondent argued for dismissal in its return of writ. ECF No. 6. When a party raises timely objections to a magistrate judge's report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

[2]

**DISCUSSION**

Petitioner raises two (2) grounds for relief. The Court will first address Petitioner's claim (raised as "Ground Two" in the petition) that his guilty plea was not made knowingly, intelligently, or voluntarily (hereinafter sometimes referred to as "trial error"). ECF No. 1, PAGEID # 35. Next, the Court will address Petitioner's claim (raised as "Ground One" in the petition) that he received ineffective assistance of appellate counsel. *Id.* at PAGEID # 33. Importantly, Petitioner's claim of ineffective assistance of appellate counsel alleges that his appellate counsel was ineffective for failing to raise, on direct appeal, the issues which constitute the trial error. *Id.*

Petitioner entered his plea on February 12, 2020, and was sentenced on the same day. The trial court memorialized the plea and sentence in a journal entry dated February 21, 2020, which stated a "mandatory sentence of fourteen (14) years" for Petitioner. ECF No. 5, PAGEID # 77. However, while Petitioner's direct appeal was pending, the trial court filed a nunc pro tunc entry on May 6, 2020, purporting to "correct an error" in the original sentencing entry. *Id.* at PAGEID # 80. On June 22, 2020, with Petitioner's appeal still pending, the trial court filed another nunc pro tunc "to correct an error in the Amended Entry previously filed." *Id.* at PAGEID # 88.[2]

For the relevant procedural history of Petitioner's direct appeal and subsequent challenges to his sentence, the Court turns to the Magistrate Judge's summary, set forth as follows:

> **A. Direct Appeal**
>
> On March 9, 2020, Petitioner, proceeding *pro se*, filed a timely notice of appeal to the Ohio Fourth District Court of Appeals. (Doc. 5 at PAGEID # 96-106.) The appellate court appointed counsel for Petitioner, and Petitioner raised three assignments of error:
>
> First Assignment of Error: The trial court did not have jurisdiction to resentence defendant-appellant.

---

[2] The specific corrections made in the nunc pro tunc entries are not pertinent to this opinion except to the extent that they signal confusion on the part of the sentencing court.

Second Assignment of Error: The defendant-appellant's plea was involuntary and must be vacated.

Third Assignment of Error: The indefinite sentencing scheme adopted by the Reagan Tokes Act is an unconstitutional violation of separation of powers, such that defendant's sentence must be vacated.

(*Id*. at PAGEID # 110.)

On February 22, 2021, the state appellate court issued a decision sustaining Petitioner's first assignment of error and overruling Petitioner's second and third assignments of error. (*Id.* at PAGEID # 151-69.) With respect to the first assignment of error, the appellate court determined that the trial court's amended sentencing entries were "legal nullities" because the trial court no longer had jurisdiction to act once the notice of appeal was pending. (*Id.* at PAGEID # 158.) The court of appeals remanded the case to the trial court, authorizing the trial court to file new amended sentencing entries, because "generally nothing precludes a trial court from filing amended entries after a remand." (*Id.*)

Petitioner did not appeal the decision of the Fourth District Court of Appeals to the Ohio Supreme Court, and his filing deadline expired April 8, 2021.

### B. Amended Sentencing Entry

On March 15, 2021, and pursuant to the remand from the court of appeals, the trial court filed an amended sentencing order correcting Petitioner's original sentencing entry. (Doc. 5, at PAGEID # 349-56.) Petitioner did not appeal the amended sentencing entry.

### C. Post-Conviction

On July 29, 2020, Petitioner, proceeding pro se, filed a post-conviction action seeking to vacate or set aside his conviction. (Doc. 5, at PAGEID # 199-223.) Petitioner set forth three claims for relief all asserting ineffective assistance of trial counsel:

[4]

> Claim One: [Petitioner] was deprived of [his] Sixth Amendment right to counsel because trail [sic] counsel was ineffective.
>
> Claim Two: [Petitioner] was deprived of [his] Sixth Amendment right to effective assistance of counsel, right to a speedy and public trail [sic], right to call witnesses in [his] defense.
>
> Claim Three: [Petitioner] was denied the 5th and Fourteenth and the Sixth was denied due process and right to efftive [sic] assistance of counsel.

(*Id.* at PAGEID 202, 209, 214.).

On August 18, 2020, the trial court denied the petition for postconviction relief, finding Petitioner "made a knowing, intelligent, and voluntary guilty plea in the presence of counsel and the Court," and Petitioner's plea "waived any claim that his counsel was ineffective." (*Id.* at PAGEID # 262.)

Petitioner did not appeal the trial court's decision denying post-conviction relief.

**D. Rule 26(B) Application to Reopen Appeal.**

On April 26, 2021, Petitioner filed a *pro se* application to reopen his direct appeal pursuant to Ohio App. R. 26(B). (Doc. 5, at PAGEID # 170-86.) Petitioner alleged appellate counsel provided ineffective assistance of counsel on direct appeal by failing to raise the following claim:

> The trial court erred in the prejudice of appellant in its acceptance of a guilty plea which was not knowing, intelligent and voluntary, in violation of appellant's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 [of] the Ohio Constitution.

(*Id.* at PAGEID # 172.) The gist of Petitioner's claim was that appellate counsel should have alleged that the trial court erred by "misadvising him of the mandatory nature of his prison term" and "advising him that, before he serves his maximum prison term, he may be eligible to earn credit

[5]

against his prison term and be eligible for early release." (*Id.* at PAGEID # 192.)

On September 28, 2021, the state appellate court declined to reopen the direct appeal, finding Petitioner failed to establish a genuine issue as to whether he was deprived of the effective assistance of counsel on direct appeal. (*Id.* at 187-98.) Petitioner had until November 12, 2021, to appeal the decision of the court of appeals denying his Rule 26(B) application. The Ohio Supreme Court refused to consider Petitioner's appeal, because it was received three days late, on November 15, 2021. (Doc. 8, at PAGEID # 520.)

**E. Motion to Withdraw Plea**

On March 15, 2021, Petitioner filed a motion to withdraw his guilty plea. (Doc. 5, at PAGEID # 299.) On March 17, 2021, the trial court denied the motion. (*Id.* at PAGEID # 348.) Petitioner did not appeal the trial court's decision.

**F. Second Motion to Withdraw Plea**

On November 19, 2021, Petitioner filed a second motion to withdraw his guilty plea. (Doc. 5 at PAGEID # 357-58.). On May 24, 2022, the trial court denied the motion. (*Id.* at PAGEID # 359.) Petitioner did not file a notice of appeal.[3]

R&R, 3-6. Additionally, the Magistrate Judge thoroughly and accurately outlined the applicable law regarding federal habeas petitions and the doctrine of procedural default:

**[AEDPA]**

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214, apply to this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA limits the circumstances under

---

[3] This appears to be incorrect, as the state court record shows that Petitioner filed a notice of appeal on June 22, 2022. ECF No. 5, PAGEID # 382. The Court takes judicial notice of the docket for case number 19CR000511 in the Washington County Court of Common Pleas, which indicates that this appeal was dismissed as moot.

which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state court proceeding. Specifically, under AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors. This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015). Additionally, this Court's habeas review is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

### [Procedural Default]

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court

of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. See *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent

> state ground, then the petitioner may still obtain review of his or her claims
> on the merits if the petitioner establishes: (1) cause sufficient to excuse the
> default and (2) that he or she was actually prejudiced by the alleged
> constitutional error. *Maupin*, 785 F.2d at 138. In order to establish cause,
> a petitioner must show that "some objective factor external to the defense"
> impeded the petitioner's efforts to comply with the state's procedural rule.
> *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the
> burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239,
> 245 (6th Cir. 2001).

R&R, 7-9, ECF No. 10. Petitioner and Respondent each offer summaries of the law consistent with that set forth above; in other words, there appears to be no dispute as to the applicable law and standard of review.

Based on the above procedural history and relevant law, the Magistrate Judge determined that both claims were procedurally defaulted. *Id.* at 15. However, the Magistrate Judge further concluded that Petitioner could establish cause sufficient to excuse his procedural default due to prison mailroom delays which stymied his efforts to exhaust his state court remedies. *Id.* at 19. Naturally, Petitioner does not object to that conclusion. However, the Magistrate Judge determined that Petitioner could not establish prejudice. *Id.* at 25. The Court construes Petitioner's objections as primarily disputing the no-prejudice conclusion.[4]

With regard to the procedural default analysis, Petitioner's grounds for relief take on a nesting-doll character, as illustrated by the following passages in the R&R:

> In this case, Petitioner committed more than one procedural
> default… Here, Petitioner failed to raise the underlying claim of trial

---

[4] Petitioner also objected to the Magistrate Judge's summary of the facts and procedural history. The Court considers Petitioner's objections in that regard to be, effectively, another means of disputing the Magistrate Judge's conclusion that he could not establish prejudice, which is the only substantive legal holding at issue.

> court error set forth as his second claim for relief on direct appeal. Further, once Petitioner sought to assert a claim of ineffective assistance of appellate counsel for failing to raise that claim of trial court error on direct appeal, Petitioner did not timely appeal the adverse decision of the court of appeals dismissing his Rule 26(B) application…
>
> Because the Undersigned has determined Petitioner cannot establish prejudice resulting from appellate counsel's failure to raise the substantive claim of trial court error in connection with the plea, Petitioner cannot establish the required prejudice to excuse the default of his ineffective assistance of appellate counsel claim set forth as his first claim for relief. Because that ineffective assistance of appellate counsel claim is defaulted, that claim cannot excuse the procedural default of the substantive claim of trial court error set forth as the second claim for relief in these habeas proceedings.

*Id.* at 15, 25. As noted, the Court agrees with and adopts the Magistrate Judge's summation of the applicable law and his determination that both claims were procedurally defaulted; however, the Court reaches a different conclusion as to whether Petitioner has made the requisite showing to excuse his procedural default.

The Court will first consider whether Petitioner's plea was made voluntarily, knowingly, and intelligently. If Petitioner can establish a constitutional error in the trial court's acceptance of his plea, and that he was prejudiced by such error, the Court must next consider whether Petitioner's appellate counsel was objectively unreasonable for failing to raise the issue of the constitutional defect on direct appeal. On the other hand, if the plea is determined to be constitutionally sound, or if Petitioner establishes a constitutional error but cannot demonstrate a prejudicial effect therefrom, both claims in the instant petition must fail, because (as the Magistrate Judge concluded) Petitioner would be unable to show that his appellate counsel was objectively

unreasonable for failing to raise an issue where there was none. *See Wells v. Potter*, No. 16-4133, 2018 WL 1614273, at *2 (6th Cir. Jan. 24, 2018) ("[Petitioner] does not show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."). The Magistrate Judge began his analysis on the other end (reflecting the order in which the claims are presented in the petition) by first addressing the claim of appellate error. However, as the R&R demonstrates, the prejudice analysis for a claim of ineffective assistance of appellate counsel "necessarily involves an examination of the merits of the underlying claim." ECF No. 10, 19. The claims are mutually dependent on one another, but all roads lead to the guilty plea. This Court thus begins at the beginning.

## I. Petitioner's Claim That His Plea Was Involuntary ("Trial Error")

To comport with the due process mandates of the Fourteenth Amendment, a guilty plea must be entered voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969). A plea is entered voluntarily and intelligently when the defendant has "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970). More specifically, the defendant must be apprised "of the direct consequences of the plea"; but "the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). When distinguishing between a direct versus collateral consequence, the Sixth Circuit has described the latter as "one that remains beyond the control and responsibility of the district court in which that conviction was entered." *Kratt v. Garvey*, 342 F.3d 475, 485 (6th Cir. 2003). A plea can only be voluntary if the defendant is aware of the maximum possible sentence for the offenses to which they are pleading. *King*, 17 F.3d at 154. Thus, consideration of the voluntariness of Petitioner's plea

[11]

requires the Court to consider the relevant criminal statutes and applicable sentencing provisions of Ohio law.

### A.     Ohio's Sentencing Scheme

In Ohio, the Reagan Tokes Law ("RTL") adds an extra wrinkle to the determination of a defendant's maximum sentence for certain offenses. O.R.C. § 2901.011. The RTL requires Ohio courts to impose *indefinite* sentences for most first- and second-degree felonies, such that an offender's sentence for such felonies will be stated in the form of "minimum" and "maximum" terms of incarceration. O.R.C. § 2929.14. The minimum term is "selected by the court" from the relevant terms of years set forth in the statute.[5] *Id.* However, the maximum term is determined by the procedure set forth in O.R.C. § 2929.144, which provides, as relevant to the instant case:

> (2) If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, and **the maximum term shall be equal to the total of those terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced**.

O.R.C. § 2929.144(B)(2) (emphasis supplied). The RTL provides that "there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term." O.R.C. § 2967.271. This presumption can be rebutted—and the

---

[5] E.g., as applicable to the instant case: "For a felony of the second degree… the prison term shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years." O.R.C. § 2929.14

offender can be made to serve his/her sentence up to the maximum term as calculated above—upon certain determinations made by the department of rehabilitation and correction. *Id.*

Math-averse jurists will find cold comfort that the RTL sentencing scheme, since first going into effect in March 2019, has spawned abundant litigation and vastly differing conclusions on its constitutional validity. *See, e.g., State v. Maddox*, 2022-Ohio-764, 168 Ohio St. 3d 292, 198 N.E.3d 797 (Supreme Court of Ohio opinion with three dissents as to the ripeness of a constitutional challenge to RTL); *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536, *appeal allowed,* 2022-Ohio-1485, 166 Ohio St. 3d 1496, 186 N.E.3d 830, and *aff'd sub nom. In re Cases Held for State v. Hacker & State*, 2023-Ohio-3863, 174 Ohio St. 3d 92, 234 N.E.3d 403, *cert. denied sub nom. Shepard v. Ohio*, No. 23-7094, 2024 WL 2805805 (U.S. June 3, 2024) (en banc appellate panel denying constitutional challenge to RTL, vacating prior holding finding law unconstitutional; four separate opinions); *cf.* § 118:4.50. Legal Challenges to Reagan Tokes Act, Baldwin's Oh. Prac. Crim. L. § 118:4.50 (3d ed.) (cataloging challenges under various theories and case examples).

Before the Supreme Court of Ohio weighed in, constitutional challenges to the RTL found disparate reception across Ohio's twelve appellate districts. *See State v. Hearn*, 2021-Ohio-594, ¶ 29-34 (summarizing then-state of appellate district split on constitutionality of RTL). On July 26, 2023—well after Petitioner commenced the instant habeas action—the Supreme Court of Ohio settled the split, rejecting the three predominant theories of constitutional challenges by holding: (1) that RTL does *not* violate the separation of powers doctrine; (2) that RTL does *not* violate the right to a jury trial; and (3) that RTL is *not* void for vagueness, and does not otherwise violate procedural due process. *State v. Hacker*, 2023-Ohio-2535, 173 Ohio St. 3d 219, 229 N.E.3d 38.

Petitioner does not challenge the constitutionality of RTL, but the complexities of the law provide important background for this case.

Petitioner pleaded guilty to two counts of Felonious Assault under O.R.C. § 2903.11, each a second-degree felony. Under Ohio law, a term of incarceration is presumptively appropriate for any second-degree felony, though that presumption can be rebutted. *See* O.R.C. § 2929.13(D)(1) ("[F]or a felony of the first or second degree… it is presumed that a prison term is necessary in order to comply with the purposes and principles of sentencing."). However, O.R.C. § 2929.13(F) sets forth the circumstances in which the imposition of a prison term is mandatory,[6] and paragraph (F)(6) specifically requires a term of imprisonment for "Any offense that is a first or second degree felony… if the offender was previously convicted of or pleaded guilty to… any first or second degree felony." O.R.C. § 2929.13(F)(6); *see also State v. Paskins*, 2022-Ohio-4024, ¶¶ 100-104 (discussing application of 2929.13(F) in detail).

Under Ohio law, a mandatory sentence such as Petitioner's is in fact "mandatory" in two senses: first, it is *imposition-mandatory* in the sense that the sentencing court has no discretion to impose a non-prison sanction. *See* O.R.C. § 2929.13(F)(6). The *imposition* of the sentence is mandated.[7] But a sentence such as Petitioner's is also *service-mandatory* in the sense that it renders him ineligible for various statutory programs, such as judicial release, which allow a sentence to be reduced—i.e., the *service* of the (complete) sentence is mandatory. *Id.*[8] Ohio law does not specifically articulate this imposition/service distinction, but it's useful here: to the extent that

---

[6] While O.R.C. § 2929.13(F)(6) does not specifically describe the prison sanction imposed on Petitioner as "mandatory," the Ohio Revised Code elsewhere defines "mandatory prison term" to include those that the court "shall" impose under (F)(6). O.R.C. § 2929.01.

[7] To be clear, a sentence may be imposition-mandatory, but in many cases the court has discretion to choose among prison terms of different duration as set forth in the applicable statute. *See* supra n.5.

[8] Specifically, O.R.C. § 2929.13(F) commands that "the court **shall** impose a prison term or terms" and "**shall not reduce** the term or terms" pursuant to O.R.C. § 2929.20 (judicial release), 2967.193 (sentence reduction for participation in certain programs), or 2967.194 (additional sentence reduction provisions). O.R.C. § 2929.13 (emphasis supplied).

[14]

Petitioner seeks relief based on his ignorance of the "mandatory nature" of his sentence, he has a stronger claim as to its service-mandatory nature than its imposition-mandatory nature.

A final note of clarification: an indefinite sentence imposed under RTL refers to a "minimum term" or "definite term"—i.e., the presumptive sentence to be served absent certain determinations by the department of rehabilitation and corrections. On first impression, the descriptors "minimum" and "definite" appear to be synonymous, in some sense, with "mandatory," such that one could reason that an offender could serve *nothing less than* the "minimum" term, and that its "definite" nature means it cannot be reduced by judicial release or good time credit. But Ohio law makes clear that the "minimum prison term" imposed under RTL can be reduced by judicial release or good time credit to the extent the offender is eligible (O.R.C. § 2967.271(A)(1)), and a sentencing court retains discretion to impose non-prison sanctions for certain RTL offenses, unless otherwise provided by the revised code (O.R.C. § 2929.13). In sum, a "minimum term" in the context of RTL *does not* (necessarily) describe a mandatory sentence.

In the instant case, Petitioner had a prior conviction for felonious assault,[9] thus requiring the trial court to impose a prison sentence (i.e., the sentence was imposition-mandatory) which was not eligible to be reduced by Petitioner's program participation or by function of judicial release (i.e., the sentence was also service-mandatory). O.R.C. § 2929.13(F). Unfortunately, Petitioner was not advised of the mandatory nature of his sentence, in either sense, and the record

---

[9] Petitioner argues that the State coerced his plea by improperly including Repeat Violent Offender ("RVO") specifications as to each felony count of the original indictment, pursuant to O.R.C. § 2941.149. Petitioner contends that the State, in a pretrial discovery response, purported that "the Defendant has a known criminal history" and listed three (3) previous Felonious Assaults and one (1) charge of Rape. Petitioner argues that two (2) of the Felonious Assaults were "completely falsified/fabricated" and that the Rape charge ended in Petitioner's acquittal, thus making the RVO specifications inapplicable. Setting aside Petitioner's arguments regarding coercion and the RVO specifications, there is no dispute that Petitioner had at least one (1) prior Felonious Assault at the time of his sentencing in this case.

reveals numerous instances in which Petitioner was given misleading or outright incorrect information.

### B. Issues with Petitioner's Plea

The written plea agreement, as signed by Petitioner, states "I understand that the MAXIMUM penalty COULD be: a maximum basic prison term of 20 years of which 0 years are mandatory, during which I am NOT eligible for judicial release or community control." ECF No. 5, PAGEID # 68. This is incorrect. In fact, the maximum term for Petitioner's offenses would be 20 years, of which *16 years* would be mandatory—i.e., could not be abridged by judicial release or Petitioner's earning of good time credit. *See* O.R.C. § 2929.144(B)(2). By incorrectly stating that "0 years" were mandatory, the written plea agreement falsely suggested that Petitioner could be eligible for community control instead of a prison sentence. Worse, by indicating that Petitioner would be ineligible for judicial release for "0 years," the plea agreement gave the stark impression that the sentence was not service-mandatory, and that Petitioner would be *always* eligible for judicial release—even under the "MAXIMUM penalty." ECF No. 5, PAGEID # 68

The erroneous information recited in the plea agreement was not cured by the plea colloquy. Indeed, a review of the transcript of the plea and sentencing reveals that Petitioner was never advised that his sentence was mandatory, and that, if anything, representations at the hearing only compounded the confusion. For example, during sentencing, the court stated its findings that "a prison term is consistent with the purposes and principles of sentencing and that the Defendant's not amenable to any available community control sanction." ECF No. 5, PAGEID # 422. Given that Ohio law mandated the imposition of a prison sentence, such findings were superfluous. Petitioner cannot argue that this statement contributed to *inducing* his guilty plea, because the court had already accepted his plea by that point. However, statements such as this and others cast

considerable doubt on the sentencing court's own understanding of the applicable law, and, in turn, undermine any confidence that Petitioner could have had "sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Similarly, though the court reiterated the plea agreement's language that "most prison inmates are eligible to earn days of credit," but that "some inmates… are not eligible," it failed to inform Petitioner that his plea put him squarely in the latter category, pursuant to O.R.C. § 2929.13(F). ECF No. 5, PAGEID # 424.

During the plea colloquy, the court and Petitioner's trial counsel engaged in a lengthy discussion regarding the (then-new) RTL which hardly clarified Petitioner's sentencing outlook. When the court first mentioned RTL and its potential to extend Petitioner's sentence by three-and-a-half (3.5) years, Petitioner asked, "Does that even apply to me?" *Id.* at PAGEID # 412. The correct answer was, unambiguously, "yes." But instead, the court responded, "It's currently being litigated, as to its Constitutionality." *Id.* While it appears that Petitioner was effectively informed of the gist of what RTL meant for his sentence—that the 14-year minimum prison term could be extended by 3.5 years "for being bad" (*Id.* at PAGEID # 413)—it was likely paired with a strong impression that RTL would be held unconstitutional before it would ever apply to him. Petitioner's trial counsel explicitly stated, "I told my client, in my opinion, it will not survive a legal challenge, but I can't guarantee that." *Id.* Fanning the uncertainty, the court replied, "Right. None of us can guarantee what's going to happen with the future of that particular law." *Id.* Openly considering the unconstitutionality of a statute while at once sentencing a defendant upon that same statute naturally raises concerns of propriety, and, in any event, only risks obfuscating the particularities of the sentence being imposed. Later, during sentencing, Petitioner's trial counsel took care to state his objection to the constitutionality of RTL on the record, but then, puzzlingly, stated, "I've

explained to [Petitioner], he does not have to file his own appeal on [RTL], since it's a Constitutional issue." *Id.* at PAGEID # 420. Again, the court indicated assent. *Id.*

Near the very end of the hearing, after the court had imposed the sentence and asked counsel if they had anything further to put on the record, Petitioner asked, "is there any way that I can get an earlier release, like after ten years?" *Id.* at PAGEID # 425. As with the application of RTL to Petitioner's sentence, the law dictated the unambiguous answer: no. The nature of his sentence excluded him from the various statutory sentence-reduction provisions available to Ohio inmates in the ordinary course. *See supra*, § I.A. The sentencing court directed Petitioner to talk to his attorney regarding earlier release, but by then the plea had been accepted and the sentence imposed, despite Petitioner's question evincing a fundamental misunderstanding of the service-mandatory nature of his sentence. ECF No. 5, PAGEID # 425-26.

### C.     State Court Findings

In recommending dismissal of this action, the Magistrate Judge largely followed the reasoning of the Fourth District Court of Appeals when it dismissed Petitioner's application to reopen his appeal. As to the patently incorrect "MAXIMUM penalty" on the face of the plea agreement, the Fourth District found no issue because the plea agreement also accurately states the agreed disposition of seven years on each count. ECF No. 5, PAGEID 193-97. Indeed, on page 2 of the plea agreement, the agreed disposition is stated as "Plead to counts 1 and 2, remaining counts and the specifications will be dismissed. Serve a 7 year prison term on each count consecutively, up to a maximum possible term of 17 ½ years." *Id.* at PAGEID # 69. From this, the Fourth District concluded that "while one part of the agreement states that zero years of appellant's penalty are mandatory, another part of the document **correctly sets forth the plea and the correct nature of the penalty**." *Id.* at PAGEID # 194 (emphasis supplied). The Fourth District did not explain how

[18]

Petitioner was to heed only the correct portions of his plea agreement and disregard the incorrect portions, thus arriving at a constitutionally appropriate understanding of his sentence.

But even if this Court assumes Petitioner could somehow differentiate between correct and incorrect portions of the agreement he signed, this line of reasoning would still depend on the plea agreement *actually stating the correct information*. Presumably, "the correct nature of the penalty" would include the mandatory imposition of a prison term which could not be reduced by judicial release and good time credit; i.e., that his sentence was imposition-mandatory and service-mandatory. But, despite the Fourth District's conclusion to the contrary, the plea agreement does not actually say any of that, anywhere.[10] *Id.* at PAGEID # 68-70. Even so, the Fourth District was satisfied that "the trial court advised appellant of the mandatory nature of his sentence during the plea colloquy, at sentencing, and in the sentencing entry." *Id.* at PAGEID # 194. But again, the record reflects no mention of the mandatory nature of Petitioner's sentence at the plea colloquy. Consider the following transcript excerpts quoted by the Fourth District to support its finding that the trial court "spoke to the mandatory nature" of Petitioner's sentence:

> [Court:] You understand that the—while there's an agreed disposition of seven years on each of the charges, to run consecutively with one another, the actual maximum on these particular counts is eight years.[11] But it's—it's—the agreement is only doing seven. You understand that?
> ...
> [Court:] As I indicated, there's an agreed disposition that upon this plea, the other counts and the specifications will be dismissed.[12]

[10] In fact, the plea agreement states that "most prison inmates are eligible to earn days of credit against their prison sentences." *Id.* at PAGEID # 69. The plea agreement also mentions the possibility of community control. *Id.* But it does not mention that, in each case, Petitioner's guilty plea would render him categorically ineligible. *Id.*

[11] Here, the court is referring to the longest definite term of incarceration available (pursuant to statute) for the offense of second-degree felonious assault. *See* O.R.C. § 2929.14.

[12] It's possible that the dismissal of the specifications compounded Petitioner's misunderstanding of the mandatory nature of his sentence. As noted *supra*, n.9, Petitioner was charged with Repeat Violent Offender ("RVO") specifications as to each count in the original indictment. In most circumstances, a RVO specification carries an imposition-mandatory prison sentence. *See* O.R.C. § 2929.14(B)(2). In all circumstances, a sentence imposed for a RVO specification is service-mandatory, i.e., cannot be reduced by judicial release or good time credit. *Id.* at (B)(2)(d). But the dismissal of these specifications did not affect the service-mandatory nature of Petitioner's sentence.

[19]

> You're going to get seven years on each of the two counts. It'll be consecutive. So it'll be fourteen years.

*Id.* at PAGEID # 193. Neither of these statements gave any indication that Petitioner's sentence would be mandatory in either sense.[13] And regardless of whether the mandatory nature was mentioned during sentencing (it was not) or in the sentencing entry (it was),[14] by that point, the plea had already been offered and accepted in open court. Notably, the trial court proceeded to sentence Petitioner immediately after accepting his plea. *Id.* at PAGEID # 417.

Despite no mention of the mandatory nature of Petitioner's sentence prior to the acceptance of his plea, the Fourth District found that the trial court "sufficiently complied" with Criminal Rule 11: "Expressing an understanding of the maximum sentence includes an inherent understanding that the mandatory nature of the sentence would make him ineligible for community control sanctions, early release, and earned credit." *Id.* at PAGEID # 196. Again, the knowledge attributed to Petitioner is not supported by the record. Petitioner was advised via the plea agreement that "$\underline{0}$ years" were mandatory, an error which was never corrected during the colloquy—thus, to the extent that Petitioner "express[ed] an understanding of the maximum sentence," his understanding was fundamentally incorrect. As this Court sees it, the Fourth District had it backwards: understanding the service-mandatory nature of the (maximum) sentence—i.e., that Petitioner was ineligible for community control, early release, and earned credit—is inherent to understanding the maximum sentence.

---

[13] As noted, Petitioner's ignorance of the service-mandatory nature of his sentence is more significant than his ignorance of its imposition-mandatory nature. Though it appears likely that he was ignorant as to both, he cannot reasonably contend that his ignorance of the imposition-mandatory nature had a prejudicial effect, given that he entered a plea agreement in which he agreed to be sentenced to prison, and the court made clear its intent to follow the agreed disposition. In contrast, nothing in the plea agreement or the hearing transcripts indicates that Petitioner knowingly agreed to a service-mandatory sentence.

[14] Briefly—the sentencing entry was amended, via nunc pro tunc, no less than three (3) times. By the third iteration, the sentencing court had removed the word "mandatory" and replaced it with "definite" in most (but not all) instances in the entry. ECF No. 5, PAGEID 349-356.

[20]

Though AEDPA requires that this Court defer to the factual determinations of the state courts, the requirement gives way when such factual determinations are not "fairly supported by the record." *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991); *see also* 28 U.S.C. § 2254(d)(2). In *Hart*, the petitioner was repeatedly advised by the court and his counsel that he would serve only fifteen years, when in fact he was sentenced (under a prior indefinite sentencing scheme) to a term of thirty to seventy-five years in prison. *Id.* at 257. Despite the stark difference between the on-the-record advice provided to the petitioner and his actual sentence, the state appellate court determined that the petitioner "was aware of the actual sentencing possibilities." *Id.* at 259. But the Sixth Circuit found no support in the record for this determination, noting that "nowhere does the record show that [petitioner] was informed before entering his plea of the true sentence." *Id.* at 258. In fact, the record appeared to show that the sentencing judge and the petitioner's counsel were both confused, further undermining the state court factual determination that the petitioner "was aware of the actual sentencing possibilities." *Id.* at 258-259 (noting from the transcript "evidence that the trial judge himself did not understand the consequences of the plea agreement and, accordingly, did not give [petitioner] correct information on the consequences of his plea."). Therefore, finding deference to state court factual determinations to be unwarranted upon the record before it, the Sixth Circuit determined that the petitioner's plea was not entered voluntarily, and thus habeas relief was appropriate. *Id.* at 259.

In *Wells v. Potter*, an unpublished opinion, the Sixth Circuit considered a habeas petition from an Ohio inmate arguing that "the trial court improperly failed to advise him during his guilty plea colloquy that his sentence included a mandatory term of incarceration, thereby rendering him ineligible for judicial release." No. 16-4133, 2018 WL 1614273, at *2 (6th Cir. Jan. 24, 2018). The petitioner maintained that he would not have pleaded guilty if he knew that he was ineligible for

judicial release. *Id.* at *3. However, the Sixth Circuit noted that "while the court did not inform [petitioner] that he would be ineligible for judicial release, Ohio courts are not required to provide this information as part of the plea colloquy, **absent some misstatement elsewhere regarding that fact**." *Id.* (citations omitted) (emphasis supplied). No such misstatement appeared in the record in *Wells*. In contrast, as discussed above, the written plea in the instant case agreement gave the clear, erroneous impression that Petitioner's eligibility for judicial release was not at risk by providing that, even under the maximal sentence, Petitioner would be ineligible for judicial release for "0 years." ECF No. 5, PAGEID # 68. While this may seem like a circuitous way to communicate Petitioner's eligibility for judicial release, it's a much stranger way to communicate that he is *ineligible*.

For the reasons above, this Court departs from the determination of the state appellate court, and instead finds that Petitioner's plea was not entered with "sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970). Therefore, the plea was not voluntarily and intelligently entered. However, in order for Petitioner to overcome the procedural default of this claim, he must make the additional showing that he was prejudiced by the constitutional error such that it affected his substantial rights.[15]

### D.     Prejudice

To demonstrate prejudice, the Supreme Court has held that "in cases where the burden of demonstrating prejudice (or materiality) is on the defendant seeking relief," the defendant must

---

[15] As noted, Petitioner must also show "cause sufficient to excuse the default" in addition to actual prejudice. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Petitioner's showing of cause with regard to his claim of trial error depends on his successful presentation of his claim for ineffective assistance of appellate counsel. See *sub*. § II. In other words, Petitioner's failure to properly present his claim of constitutional trial error on appeal can be excused if Petitioner can show that his appellate counsel was constitutionally ineffective for doing so.

show "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 81–82, 124 S. Ct. 2333, 2339, 159 L. Ed. 2d 157 (2004) (citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). In the context of alleged errors concerning a court's acceptance of a guilty plea, the Supreme Court has that prejudice must be shown by "a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. This Court finds that Petitioner has made the requisite showing to establish that he was prejudiced by the trial court accepting his plea which he did not enter voluntarily or intelligently.

Petitioner maintains that he had a legitimate argument that he was acting in self-defense, and to that end he contends that he had arranged for multiple witnesses to appear and testify on his behalf at a final pretrial hearing scheduled on February 3, 2020. Numerous affidavits in the record appear to confirm that Petitioner had witnesses ready to testify in his defense. ECF No. 5, PAGEID # 216-23. The affidavits, appearing to be executed by Petitioner's sister, brother, sister-in-law, and the mother of his children, describe arriving at court on for the final pretrial hearing only to learn that Petitioner's counsel was ill and thus the hearing would be continued. *Id.* The very next day, February 4, Petitioner appeared with counsel to decline an offer of disposition from the State of Ohio.[16] *Id.* at PAGEID # 403-05 Then, with his trial date set for February 18, Petitioner entered his guilty plea at a hearing on February 12. The affidavits claim that the witnesses were unaware of either hearing after February 3 despite Petitioner's repeated requests to his counsel that they be brought to court on his behalf.[17] *Id.* The affidavits also describe meeting with Petitioner's counsel at his office and allege that he was dismissive of their expected testimony. *Id.*

---

[16] The February 4 offer was for 8 years on each of the Felonious Assault counts, to be served consecutively, with the remaining counts dismissed.
[17] The transcript of the plea and sentencing hearing lends some support to the affiants' contention that they were prevented from appearing and testifying on Petitioner's behalf. When the court asks counsel for the state if there is a

The merits of Petitioner's self-defense argument are unclear from the thin factual record. But while the prejudice inquiry requires a consideration of Petitioner's chance at acquittal, it does not "[look] to the probability of conviction for its own sake." *Lee v. United States*, 582 U.S. 357, 367, 137 S. Ct. 1958, 1966, 198 L. Ed. 2d 476 (2017). In other words, even without fully vindicating his affirmative defense at this stage, the sworn statements of multiple people willing to testify on his behalf can still support Petitioner's burden by demonstrating his willingness to take the case to trial.

Petitioner's obvious misunderstanding of the nature of his sentence also supports his argument that he would not have accepted the plea deal. When Petitioner asked, "is there any way that I can get an earlier release, like after 10 years?" he demonstrated a clearly flawed understanding of the service-mandatory sentence that had just been imposed upon him. ECF No. 5, PAGEID # 425. He then said, "I got three children out there, and I'd just like to get back to taking care of them." *Id.* Prejudice is not established by the featherweight showing of a reason why Petitioner would prefer less time in prison, but this statement further colors in the impression that Petitioner subjectively believed himself to be receiving a materially different sentence in exchange for his plea than what he in fact received. Therefore, this Court finds that Petitioner has shown a reasonable probability that, but for the errors discussed *supra*, he would not have entered the plea. In other words, had Petitioner been properly advised of the mandatory, irreducible nature of the sentence that would be imposed upon him, his refusal of the offer appears reasonably probable.

---

victim impact statement, he replies "They were both notified today. Obviously, this was something quickly that was happening, and they couldn't make arrangements to be here." ECF No. 5, PAGEID # 418. Additionally, while the affiants generally insinuate that it was Petitioner's counsel who avoided bringing them before the court, the prosecution may have had its own reasons for avoiding such testimony, given that the mother of Petitioner's children, who originally requested (and received) a no-contact order as a term of Petitioner's bond, (*Id.* at PAGEID # 399) had by then reversed course and was seeking to testify in Petitioner's defense as his trial approached. *Id.* at PAGEID # 221.

## II.   Petitioner's Claim of Ineffective Assistance of Appellate Counsel ("Appellate Error")

Petitioner claims that his counsel on direct appeal was ineffective for failing to raise Petitioner's claim of trial court error discussed *supra*, § I—i.e., constitutional error in the court's acceptance of Petitioner's plea. Petitioner's ineffective assistance claim does not offer independent grounds for relief; rather, Petitioner must prosecute this claim to establish cause to excuse the procedural default of his claim of trial error. Stated differently, Petitioner's failure to raise his trial error claim on direct appeal would ordinarily be a conclusive mistake, mandating the denial of the claim; the claim can be saved, however, if Petitioner can show that the failure to raise it on direct appeal was due to the constitutionally ineffective assistance of his appellate counsel. However, Petitioner's claim for ineffective assistance of appellate counsel is *also* procedurally defaulted, requiring that Petitioner again make the dual showings of cause and prejudice.

### A.   Cause

Petitioner first raised his claim of ineffective assistance of appellate counsel in an application to reopen his appeal under Ohio App.R. 26(B), consistent with state procedural requirements. ECF No. 5, PAGEID # 170-86; *see also Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004) ("Under Ohio law, claims of ineffective assistance of appellate counsel must be raised in a motion for reopening before the court of appeals pursuant to Ohio App.R. 26(B)."). The Fourth District Court of Appeals denied his Rule 26(B) application, and Petitioner's attempt to appeal the denial to the Ohio Supreme Court was rejected because the filing was untimely. The timeliness required by Rule 26(B) has been held to be an "adequate and independent ground on which to find procedural default." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010). However, because Petitioner has shown that his failure to comply with the state procedural rule can be causally attributed to "some objective factor external to the defense" (*Murray v. Carrier*, 477 U.S. 478, 488

[25]

(1986)), the Magistrate Judge determined that Petitioner had established cause as to this procedurally defaulted claim:

> With respect to the appeal of the denial of his Rule 26(B) application, Petitioner asserts the prison mailroom was responsible for the untimely filing, because he submitted his appeal paperwork for delivery to the Ohio Supreme Court on November 4, 2021, eight days before the November 12, 2021, deadline. (Doc. 8, at PAGEID # 515, 518-19.) Ohio does not follow the federal "prison mailbox rule," which provides that submissions by *pro se* prisoners "are considered filed at the moment of delivery to prison officials for mailing." *Foster v. Warden, Chillicothe Corr. Inst.,* 575 F. App'x 650, 653-54 (6th Cir. 2014) (citing *Houston v. Lack,* 487 U.S. 266, 271-72 (1988). However, **a state's 'strict filing deadline' rule, which generally prevents its courts from entertaining untimely submissions, does not apply to prevent federal habeas courts 'from excusing that procedural default upon a finding of cause and prejudice.'** *Kidd v. Warden*, No. 1:13cv867, 2015 WL 269431, *7 (S.D. Oh. Jan. 21, 2015) (Bertelsman, D.J., adopting Report and Recommendation) (quoting *Foster*, 575 F. App'x at 654); *Henderson v. Palmer,* 730 F.3d 554, 560 (6th Cir. 2013); *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003))…
>
> Petitioner has attached a copy of his prison account statement showing a $2.36 debit from his account for "postage charges" to the "Ohio Supreme Court" dated November 5, 2021, seven days before his appeal filing was due on November 12, 2021. (Doc. 8, at PAGEID # 519.) Petitioner has also attached a postmarked envelope, addressed to the Ohio Supreme Court, which was returned to him when that court rejected his appeal filing. The envelope is clearly marked in large bold letters "Do Not

Delay, Legal Mail, Time Sensitive." (*Id.* at PAGEID # 521.)
Although the postmark date is not legible on the copy submitted by
Petitioner, the Court affords Petitioner the benefit of the doubt that
the postmark reads November 9, 2021. Notably, Respondent has
not disputed this date or any of Petitioner's contentions regarding
the mailing of his appeal. Based on these exhibits, it appears
Petitioner presented his legal mail to prison officials "in sufficient
time for [it] to arrive timely in the normal course of events."
*Maples*, 340 F.3d at 439. **Under these facts, Petitioner has
demonstrated cause for the late filing of his appeal that may be
able to excuse his procedural default.**

ECF No. 10, 15-19 (emphasis supplied). This Court agrees in full with the reasoning and
determination of the Magistrate Judge regarding Petitioner's demonstration of cause.[18]

B.      **Prejudice**

In addition to cause, Petitioner must also show "actual prejudice as a result of the alleged
constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). The constitutional
violation alleged is that Petitioner was denied effective assistance of appellate counsel. The
Supreme Court has long recognized the right to effective assistance of counsel on a first appeal as
of right. *Evitts v. Lucey*, 469 U.S. 387, 397, 105 S. Ct. 830, 837, 83 L. Ed. 2d 821 (1985). In accord
with the analysis articulated in *Strickland v. Washington*, 466 U.S. 668 (1984) as to claims of
ineffective assistance of trial counsel, Petitioner must show that his appellate counsel was
objectively unreasonable, and that such unreasonable performance actually prejudiced Petitioner.
*Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000). In this context,

---

[18] In the course of reaching this determination, the Magistrate Judge also granted Petitioner's motion to expand the
record to include the prison account statement and postmarked envelope as evidence of his attempt to timely appeal
the denial of his Rule 26(B) application. R&R, 18.

Petitioner can establish prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As for deficient performance, Petitioner must demonstrate that his appellate counsel failed to raise an issue that was clearly stronger than the issues that counsel did present. *Smith v. Robbins*, 528 U.S. at 288. As noted elsewhere, Petitioner's argument is that appellate counsel was deficient for failing to raise the trial error discussed *supra*, § I.

**1. Issues Raised on Direct Appeal.**

The record contains the merit brief submitted by Petitioner's appellate counsel, which states three assignments of error on direct appeal:

1. The trial court did not have jurisdiction to resentence defendant-appellant.
2. The defendant-appellant's plea was involuntary and must be vacated.
3. The indefinite sentencing scheme adopted by [RTL] is an unconstitutional violation of separation of powers, such that defendant's sentence must be vacated.

ECF No. 5, PAGEID # 114. The first assignment of error refers to the trial court's issuance of two (2) nunc pro tunc entries after Petitioner's sentencing, purporting to correct errors in the original sentencing entry. Because the trial court lacked jurisdiction to issue such entries during the pendency of the appeal, the first assignment of error was in fact sustained, and the case remanded "for resentencing." *State v. Hearn*, 2021-Ohio-594, ¶ 35. The third assignment of error attacks the constitutionality of the indefinite sentencing scheme under RTL. As noted *supra*, RTL faced many constitutional challenges before the Supreme Court of Ohio settled the issue in July 2023. *See State v. Hacker*, 2023-Ohio-2535, 173 Ohio St. 3d 219, 229 N.E.3d 38.

On its face, the second assignment of error appears to be that which Petitioner has brought before this court. However, a review of the appellate brief shows that appellate counsel was narrowly focused on the additional three-and-one-half years that could be imposed on Petitioner

under RTL. ECF No. 5, PAGEID # 116-18. Essentially, appellate counsel argued that Petitioner's plea was involuntary because he was unaware of the potential "additional" term under RTL:

> Defendant-appellant believed that he was receiving a sentence of fourteen years imprisonment. His attorney suggested that he was receiving a sentence of fourteen years imprisonment, and strongly suggested that any additional time would be unconstitutional. The [trial] Court then imposed an additional term of three-and-one-half years. Based on the above, this [appellate] Court must vacate the defendant's guilty plea and sentence as involuntarily made.

*Id.* The Fourth District court of appeals disagreed, due in no small part to the numerous instances in the record showing that Petitioner was repeatedly advised as to his indefinite sentence, including in the written plea agreement, which recites "a maximum possible term of 17 ½ years" as part of the agreed disposition. *See Id.* at PAGEID # 69.

Furthermore, Petitioner's appellate counsel inaccurately framed the alleged error as the trial court's failure to "strictly comply with Crim.R.11(C)." *Id.* at PAGEID # 116. Rule 11 of the Ohio Rules of Criminal Procedure, like its federal counterpart, sets forth the procedure that a trial court must follow in accepting a plea of guilt or no contest, and, specifically, what information must be communicated to a defendant prior to accepting his plea. Ohio Crim. R. 11. The Supreme Court of Ohio has held that trial courts must "strictly comply" with Rule 11 to the extent that the rule requires the court to advise a pleading defendant of his or her constitutional rights. *State v. Veney*, 2008-Ohio-5200, ¶ 18, 120 Ohio St. 3d 176, 180, 897 N.E.2d 621, 625 ("strict, or literal, compliance [is] required when constitutional rights are involved."). The court's recitation of the exact text of the rule is not required; rather, "the underlying purpose" of the rule "is to convey to the defendant certain information so that he can make a voluntary and intelligent decision to plead guilty." *Id.*

The Supreme Court of Ohio has defined the constitutional rights for which strict compliance is required as those set forth in paragraph (C)(2)(c) of Ohio Crim.R. 11:

> [The court shall not accept a guilty plea before]: Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Ohio Crim.R. 11(C)(2)(c).[19] For the "nonconstitutional notifications" required by Rule 11(C)(2)(a) and 11(C)(2)(b), Ohio law requires only "substantial compliance." *Veney*, 2008-Ohio-5200 at ¶ 14. Included in 11(C)(2)(a) is the requirement that the defendant "understand[] the charges" and "the maximum penalty involved." Ohio Crim.R. 11(C)(2)(a). Therefore, appellate counsel's argument—that the trial court did not "strictly comply" with Rule 11 when it failed advise Petitioner of the maximum penalty involved—misstated the well-settled law of Ohio that does not require strict compliance with 11(C)(2)(a). Furthermore, the strict compliance standard requires that a guilty plea must be vacated when a court fails to strictly comply with 11(C)(2)(c). *Veney*, 2008-Ohio-5200 at ¶¶ 26, 30. But when a court strays from the requirements of 11(C)(2)(a) or (b), however, the defendant "must show prejudice before a plea will be vacated." *Id.* at ¶ 17. In this context, as above, establishing prejudice requires a showing "that the plea would otherwise not have been entered." *Id.* at ¶ 15. These differing standards were not identified in appellate counsel's brief, and, in any event, appellate counsel offered no facts or argument with regard to prejudice.

Finally, and most significantly, Petitioner's appellate counsel failed to present any argument regarding the highly misleading written plea agreement. As described above, the written

---

[19] In the instant case, the trial court properly advised Petitioner of these rights, which were also included in the written plea agreement. *See* ECF No. 5, PAGEID # 409.

[30]

plea agreement erroneously stated that, of the maximum sentence Petitioner faced, "0 years" would be mandatory, during which Petitioner would "NOT [be] eligible for judicial release or community control." ECF No. 5, PAGEID # 68. And as this Court found above, the record sufficiently supports Petitioner's required showing of prejudice, i.e., "that the plea would otherwise not have been entered." *Veney*, 2008-Ohio-5200 at ¶ 15; *See also United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) ("[A] defendant who seeks reversal of his conviction after a guilty plea… must show a reasonable probability that, but for the error, he would not have entered the plea"). This omission is made more glaring by appellate counsel's citation to *State v. Florence* for the proposition that "a guilty plea in which the defendant was **incorrectly informed of [his] eligibility for judicial release** was not entered knowingly or intelligently," thus warranting reversal. 2004-Ohio-1956, ¶ 4 (emphasis supplied); ECF No. 5, PAGEID # 118.

In sum, the appellate brief misstated the applicable law as to Petitioner's claim of trial error and thus failed to address his burden of prejudice. Furthermore, the appellate brief failed to raise Petitioner's strongest argument—that the written plea agreement erroneously stated that Petitioner was eligible for judicial release and good time credit—despite citing to authority supporting the reversal of a conviction based upon that exact argument. Predictably, the Fourth District denied Petitioner's second assignment of error. *Hearn*, 2021-Ohio-594 at ¶ 28. The appellate court also denied Petitioner's third assignment of error, which argued that RTL was unconstitutional. *Id.* at ¶ 34. As noted, however, Petitioner's first assignment of error was sustained, and the case was remanded "for resentencing." *Id.* at ¶ 35. Following remand, the trial court issued its third nunc pro tunc entry regarding Petitioner's judgment and sentence on March 15, 2021. ECF No. 5, PAGEID # 349.[20]

---

[20] Petitioner, in his objections, claims that the trial court failed to bring him before the court for a resentencing hearing and thus failed to follow the instructions of the Fourth District on remand. While the Fourth District did indeed remand

**2. State Court Findings – Ineffective Assistance of Appellate Counsel.**

Petitioner first raised his claim of ineffective assistance of appellate counsel in his application to reopen his direct appeal pursuant to Ohio App.R. 26(B). ECF No. 5, PAGEID # 170-86. The Fourth District denied the application upon determining that Petitioner could not establish that he was prejudiced by the trial error that his appellate counsel failed to raise. However, the Fourth District's holding in this regard was based entirely on findings which, as discussed *supra*, § I.C, had little or no support in the record. "As we held in [Petitioner's] direct appeal, the trial court substantially complied with Crim.R.11. Consequently, appellant has failed to establish his claim of ineffective assistance of counsel." ECF No. 5, PAGEID # 197. Because the Fourth District's findings as to the trial error "[were] based on an unreasonable determination of the facts in light of the evidence presented" (28 U.S.C. § 2254(d)(2)), this Court is not bound by such findings or the holdings that follow therefrom. *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991). Furthermore, because the Fourth District concluded that there was no trial error, and thus no claim for appellate counsel to fail to raise, there was no occasion to consider whether such a claim was "clearly stronger" than the issues raised on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

**3. Deficient Performance – Relative Strength of Issues on Appeal**

Petitioner has established deficient performance on the part of his appellate counsel because the trial error raised in the instant habeas petition is clearly stronger than the issues that

---

"for resentencing," the scope of its holding on this assignment of error—that the first and second nunc pro tunc sentencing entries were "legal nullities" because the trial court lacked jurisdiction while the appeal was pending—was narrow and technical. To address the error identified on appeal, the trial court simply needed to file a nunc pro tunc after it assumed jurisdiction again on remand, as the Fourth District anticipated in its holding on this error: "We note, however, that generally nothing precludes a trial court from filing amended entries after a remand." *Hearn*, 2021-Ohio-594 at ¶ 15. The trial court appeared to take this cue and issued the amended entry after remand without holding a resentencing hearing, though Petitioner believes the court in fact held a hearing without him present, pointing to the signatures of counsel on the amended entry. *See* ECF No. 5, PAGEID # 349. Regardless, Petitioner did not raise this claim as a grounds for relief in the instant habeas action, and the Court offers no opinion on the merits thereof.

his appellate counsel actually raised on direct appeal. The first assignment of error on direct appeal concerned the two nunc pro tunc entries issued by the trial court while the direct appeal was pending. ECF No. 5, PAGEID # 114. As noted, Petitioner prevailed on this assignment of error because the Fourth District held that the trial court lacked jurisdiction to issue such entries. *Hearn*, 2021-Ohio-594 at ¶ 35. The appellate court remanded the case, the trial court issued a third (and final) nunc pro tunc entry, and Petitioner experienced no material change whatsoever. Petitioner's claim now before the Court, which requires vacation of his guilty plea, and which appellate counsel failed to raise on direct appeal, is clearly stronger than the attack on the nunc pro tunc entries, from which Petitioner stood to gain very little.

The second assignment of error claimed that Petitioner's plea was involuntary because even though he "believed he was receiving a sentence of fourteen years imprisonment" he was actually sentenced "to an additional indefinite period of time of three-and-one-half years" due to RTL. ECF No. 5, PAGEID # 117. The Fourth District, denying this claim on direct appeal, pointed to various places in the transcript of the plea colloquy where Petitioner was advised of the potential for additional time (E.g., "[COUNSEL]: They can add three-and-a-half years." (*Id.* at PAGEID # 412)). *Hearn*, 2021-Ohio-594 at ¶ 22. Again, Petitioner's claim now before the court is clearly stronger than this claim which appellate counsel failed to support with any evidence in the record.

The third assignment of error raised on direct appeal challenged the constitutionality of RTL, alleging that the indefinite sentencing scheme violated the separation of powers. ECF No. 5, PAGEID # 118. The Fourth District engaged in a lengthy discussion of the law and the various challenges that had been brought against it by that point, noting "at least five [Ohio] appellate districts have addressed the constitutionality of the [RTL]." *State v. Hearn*, 2021-Ohio-594, ¶ 29. Ultimately, the Fourth District concluded that the RTL question was not ripe for review. *Id.* at ¶

[33]

34. Petitioner's appellate counsel clearly had good reason to raise such a challenge given the novelty and ambiguity then surrounding the law. But at the same time, the novelty and ambiguity of RTL's status meant that a successful challenge to the law was likewise uncertain. In contrast, the claim Petitioner now brings, and which he argues his appellate counsel should have brought, was far from novel in Ohio law.

### 4. Prejudice – Reasonable Probability of Prevailing on Appeal

The crux of Petitioner's claim is that his plea was involuntary because he subjectively believed that he would be eligible for judicial release (and other sentence-reduction programs), when in fact he was categorically ineligible. Under Ohio law, a guilty plea can be found to be involuntary when a defendant is given erroneous information regarding his or her eligibility for judicial release. *State v. Williams*, 2017-Ohio-2650, ¶ 15. In *Williams*, the defendant asked the sentencing court if it would consider a motion for judicial release "after seven or eight years." *Id.* at ¶ 20. The judge stated, "you should know it's typically not my policy to grant a judicial release," but that "you can always file a judicial release motion and they are considered." *Id.* This was inaccurate, as the statute provided that the defendant would be ineligible for judicial release until he had served 12 years. *Id.* at ¶ 21; O.R.C. § 2929.20. The defendant "seemed quite concerned about the possibility of obtaining judicial release" to the point of stopping the proceedings to inquire about it. *Williams*, 2017-Ohio-2650 at ¶ 21. Similarly, the transcript here shows that Petitioner was concerned about judicial release when he asked if he could "get an earlier release, like after ten years," demonstrating his subjective misunderstanding of his sentence. ECF No. 5, PAGEID # 425.

*Williams* is not the only case with salient facts which could have been lifted from the instant record. In *State v. Silvers*, "the record establish[ed] that the trial court in the instant case had before

it a copy of [the defendant's] plea form, **which clearly stated that he did not face a mandatory sentence** and that he was eligible for community control 'upon the granting of judicial release.'" 2009-Ohio-687, ¶ 13, 181 Ohio App. 3d 26, 29, 907 N.E.2d 805, 807 (emphasis supplied). In fact, the defendant faced a mandatory sentence which rendered him ineligible for both community control and judicial release. *Id.* During the plea colloquy, the sentencing court "orally advised [the defendant] that he was not eligible for community control," but the court "made no attempt to amend [the] incorrect and misleading information in the plea form." *Id.* at ¶¶ 12-13. In the instant case, the written plea agreement committed the same error by stating that "0" years of Petitioner's sentence were mandatory. ECF No. 5, PAGEID # 68. During Petitioner's plea colloquy, neither the court nor his counsel said anything to correct this misinformation, and unlike in *Silvers*, neither of them said anything inconsistent with the erroneous information in the plea agreement. *Id.* at PAGEID # 407-427.

The Fourth District Court of Appeals, which heard Petitioner's direct appeal, also has caselaw which strongly supports Petitioner's claim. In *State v. Johnson*, the prosecution promised that there would be no objection to a motion for judicial release after four (4) years of incarceration. 2009-Ohio-1871, ¶ 13, 182 Ohio App. 3d 628, 632, 914 N.E.2d 429, 431. However, the judicial release statute provided that the defendant would only be eligible after five (5) years. *Id.* at n.3. Finding that "there [was] no question that everyone involved in the case sub judice misunderstood the law," the Fourth District vacated the plea agreement. *Id.* ¶¶ 14; 19. In the instant case, a significantly larger delta exists between the sentence described in the plea agreement and Petitioner's actual sentence: whereas the plea agreement communicated that he would be ineligible for judicial release and community control for "0" years, Petitioner would in fact *never* be eligible for judicial release or community control under his actual sentence.

[35]

In sum, this court concludes that Petitioner's claim in the instant petition, attacking the misrepresentation of the nature of his sentences, namely, his eligibility for judicial release, is "clearly stronger" than the issues actually raised by his appellate counsel on direct appeal. The straightforward body of caselaw supporting this argument demonstrates a "reasonable probability that his claim[] would have succeeded on appeal." *Franklin v. Curtin*, No. 14-1467, 2015 WL 13927273, at *3 (6th Cir. Oct. 26, 2015). Thus, Petitioner was prejudiced by his appellate counsel's deficient performance in failing to identify and present this claim on appeal.

## CONCLUSION

Petitioner has established cause and prejudice sufficient to overcome the procedural default of his claim of ineffective assistance of appellate counsel. His attempt to present this claim to the state's highest court was frustrated by prison mailroom delays beyond his control, thus establishing cause, a determination by the Magistrate Judge that this Court adopts in full. Additionally, the claimed constitutional error had a prejudicial effect—i.e., but for appellate counsel's deficient performance, a reasonable probability exists that Petitioner's claim would have succeeded on appeal. By overcoming the bar of procedural default as to his claim of ineffective assistance of appellate counsel, Petitioner has in turn established cause to excuse the procedural default of his underlying claim that his plea was involuntarily entered. And finally, because Petitioner has demonstrated a reasonable probability that he would not have entered his guilty plea but for his insufficient awareness "of the relevant circumstances and likely consequences," he has also established prejudice as to this claim.

In sum, the Court finds Petitioner's objections (ECF No. 12) have merit and hereby **SUSTAINS** the same to the extent set forth herein. Accordingly, the Court finds the petition for writ of habeas corpus (ECF No. 1) well-taken and hereby **GRANTS** the same. Petitioner's guilty

plea shall be **VACATED**. The Court **ISSUES** a writ of habeas corpus and remands to state court for further proceedings. This judgment shall be held in abeyance until the deadline for Respondent to file a timely appeal has passed.

Additionally, the Court does not disturb the Magistrate Judge's grant of Petitioner's first motion to expand the record. Petitioner filed a second motion to expand the record along with his objections to the R&R. ECF No. 13. However, in light of the holding herein, this Court finds Petitioner's second motion is moot, and therefore **DENIES** the same.

**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 28, 2024

[37]